UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GENORI MCCORMACK,

        Plaintiff,

   v.

HILTON RESORTS
CORPORATION, HILTON
MANAGEMENT LLC, PARK
HOTELS & RESORTS INC, and
BROOKFIELD ASSET
MANAGEMENT LLC,

        Defendants.

CIVIL ACTION NO.

1:23-CV-1876-SEG

## O R D E R

This case is before the Court on Defendants' motions to dismiss or, in the alternative, to transfer this case to the United States District Court for the Southern District of Florida. (Doc. 8, 21.) Having carefully considered the parties' positions and applicable law, the Court enters the following order.

## I.    Background[1]

*Pro se* Plaintiff Genori McCormack has sued Defendants Hilton Resorts Corporation, Hilton Management LLC, Park Hotels & Resorts, Inc., and Brookfield Asset Management LLC for an array of alleged violations of federal and state law in connection with her 2021 stay at a Hilton hotel in South Florida.  (Doc. 1.)  Plaintiff seeks damages for, *inter alia*, Defendants' alleged misrepresentations regarding the price of her hotel room, Defendants' failure adequately to clean and disinfect her room, and Defendants' failure to provide appropriate disability-related accommodations to Plaintiff's guests.  Plaintiff alleges that on April 22, 2021, she "responded to a Georgia ad regarding Hilton Hotels."  (*Id.* ¶ 9.)  She visited a page on "Defendants'" website relating to Hilton Hotels' COVID-19 cleaning procedures and policies – "https://covid.hilton.com."[2]  (*Id.*)  On the same date, Plaintiff "booked a room"

---

[1] At the motion-to-dismiss stage, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]"  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).  Additionally, the Court is required to liberally construe *pro se* complaints.  *Lapinski v. St. Croix Condo. Ass'n, Inc.*, 815 F. App'x 496, 497 (11th Cir. 2020).

[2] Although there are four distinct entity defendants, Plaintiff refers to them collectively as "Defendants" throughout her complaint.  There are no individualized allegations against any Defendant, so the exact role each Defendant allegedly played in the underlying events is unclear.

at the Hilton Fort Lauderdale Marina, located in Fort Lauderdale, Florida, and "request[ed] reasonable accommodations" in the form of a "handicapped-accessible" room for her "and her disabled Guests." (*Id.* ¶¶ 9, 10, 36.)

The next day, April 23, 2021, Plaintiff arrived at the Hilton Fort Lauderdale Marina, but the room that she had reserved was not available. (*Id.* ¶ 10.) Plaintiff was instead placed in four different rooms before being offered a "handicapped-accessible room" at approximately 2:00 AM. (*Id.*) Plaintiff alleges that some or all of the rooms offered to her were not properly disinfected and cleaned in conformance with Defendants' COVID-19 cleaning policies. (*Id.* ¶¶ 10, 13.) Plaintiff alleges that the room was advertised for $162 per night, but she was charged $307 per night plus taxes and fees. (*Id.* ¶ 9.)

On April 24, 2021, Plaintiff allegedly "requested another reasonable accommodation pursuant to the Fair Housing Act."[3] (*Id.* ¶ 11.) Plaintiff was placed in a different room, but that room was not "completely clean . . . or Plaintiff's accommodation was denied." (*Id.*) Plaintiff's stay at the Hilton Fort Lauderdale Marina was "so uncomfortable and stressful" that she reserved a room at a different Hilton brand hotel for a higher price. (*Id.* ¶ 12.)

---

[3] It is unclear what this requested accommodation was or why it was sought.

All told, Plaintiff alleges that over the course of three days, Defendants: (1) did not honor the advertised hotel room price, (2) did not provide the accommodations Plaintiff requested pursuant to the "[F]air [H]ousing [A]ct" and Americans with Disabilities Act ("ADA"), (3) made unauthorized charges on Plaintiff's and Plaintiff's guests' credit cards, (4) failed to ensure that the hotel rooms were cleaned in accordance with Defendants' COVID-19 cleaning procedures, and (5) were "extremely rude" to Plaintiff through their staff.  (*Id.* ¶¶ 13, 36.)

On April 25, 2023, Plaintiff filed this lawsuit against Defendants Hilton Resorts Corporation, Hilton Management LLC, Park Hotels & Resorts Inc., and Brookfield Asset Management LLC.  (Doc. 1 at 1.)  No defendant is alleged to be a citizen of Georgia; each is alleged to be a foreign entity.[4]  (*Id.* ¶¶ 5–8.) Plaintiff asserts claims for: (1) violation of the Georgia Fair Housing Act; (2) violation of the Georgia Fair Business Practices Act; (3) breach of contract; (4)

---

[4] Specifically, according to the complaint, (1) Hilton Resorts Corporation is "located" in Orlando, Florida; (2) Hilton Management LLC "is a company having its main office" in McLean, Virginia; (3) Park Hotels & Resorts, Inc. "is a company having its main office" in Tysons, Virginia; and (4) Brookfield Asset Management LLC "is a company with its main office" in New York, New York. (*Id.* ¶¶ 5–8.)

misrepresentation; (5) false advertisement; (6) violation of the ADA; and (7) negligence.  (*Id.* at 4–11.)

Defendants Hilton Management, Parks Hotels & Resorts, and Brookfield Asset Management have filed a joint motion to dismiss.  (Doc. 8.)  Defendant Hilton Resorts Corporation has moved to dismiss as well.  (Doc. 21.)  Plaintiff opposes both motions.  (Doc. 13, 22.)

## II.    Discussion

All Defendants seek dismissal on the same grounds – namely, that the Court lacks personal jurisdiction over them, venue is improper, the complaint is a shotgun pleading, and the claims fail on the merits.[5]  Defendants ask the Court to dismiss Plaintiff's claims or, in the alternative, to transfer the case to the United States District Court for the Southern District of Florida, where the Hilton Fort Lauderdale Marina is located.

### A. Personal Jurisdiction

Defendants challenge personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Because "[a] court without personal jurisdiction is powerless to take further action," courts must rule on

---

[5] Defendants also argue that the Court lacks subject-matter jurisdiction because Plaintiff's federal law claims fail on the merits and the amount in controversy requirement for diversity jurisdiction is not satisfied.

jurisdictional issues before considering the merits of a complaint.  *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  Generally, jurisdictional issues must also be resolved before considering an appropriate venue. *Leroy v. Great W. United. Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.").  The plaintiff bears the initial burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction over a nonresident defendant.  *Posner*, 178 F.3d at 1214.  When considering a motion to dismiss for lack of personal jurisdiction, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Importantly, however, "vague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

Defendants deny that they are subject to the jurisdiction of this Court under a theory of general jurisdiction.  And the Court agrees that Plaintiff's

complaint reveals no factual basis for general jurisdiction.[6]  The issue here is thus whether Plaintiff has alleged facts sufficient to establish specific personal jurisdiction over the four defendants.

A district court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)) (internal quotation marks omitted).  These two inquiries cannot be conflated because Georgia's long-arm statute, O.C.G.A. § 9-10-91, "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."  *Id.* at 1259.

The Georgia long-arm statute provides, in pertinent part, that a court may exercise personal jurisdiction over a nonresident who:

---

[6] Plaintiff argues that the Court does have general jurisdiction, but her arguments – that Defendants "purposefully availed themselves of the benefits of conducting business" in Georgia and that Defendants had "sufficient minimum contacts" in this state – go to the issue of specific jurisdiction.  (Doc. 22 at 3–4.)

(1) Transacts any business within this state;
(2) Commits a tortious act or omission within this state, except as
to a cause of action for defamation of character arising from the
act; [or]
(3) Commits a tortious injury in this state caused by an act or
omission outside this state if the tort-feasor regularly does or
solicits business, or engages in any other persistent course of
conduct, or derives substantial revenue from goods used or
consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)–(3). This Court must construe Georgia's long-arm "statute literally and give full effect to the breadth of its language." *Diamond Crystal Brands*, 593 F.3d at 1264. The statute requires "that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank*, S.E.2d 352, 353 (Ga. 2005) (citation omitted). The Court discusses below each relevant subsection of the long-arm statute and finds that none permits the exercise of jurisdiction over Defendants here.

### 1. O.C.G.A. § 9-10-91(1)

Subsection one of the Georgia long-arm statute authorizes the exercise of personal jurisdiction over a nonresident defendant who "[t]ransacts any business within this state[.]" O.C.G.A. § 9-10-91(1). "Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction,

8

and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). Physical presence in the state is not required for jurisdiction under this subsection, and Georgia allows, in certain circumstances, "the assertion of long-arm jurisdiction over nonresident defendants based on business conducted through . . . Internet contacts." *Paxton v. Citizens Bank & Trust of W. Ga.*, 704 S.E.2d 215, 219 (Ga. Ct. App. 2010) (quoting *ATCO Sign & Lighting Co., LLC v. Stamm Mfg.*, 680 S.E.2d 571, 576 (Ga. Ct. App. 2009)) (alterations adopted). The Court's task is to examine all of a nonresident's "tangible and intangible conduct" and to "ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Diamond Crystal Brands*, 593 F.3d at 1264; *see also id.* at 1264 n.18 ("'transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on'") (quoting *Webster's Third New Int'l Dictionary* 2425 (1993)). Moreover, "the statute requires that, for a Georgia court to exercise personal jurisdiction over a nonresident defendant, the cause of action must be one '*arising from*' the defendant's contact with the state." *Davis v. LG Chem, Ltd.*, 849 F. App'x 855, 857 (11th Cir. 2021) (emphasis added).

Here, most if not all of the alleged actions underlying Plaintiff's claims occurred in Florida.  The Hilton hotel that allegedly failed to provide ADA-compliant accommodations, made unauthorized charges on the credit cards of Plaintiff and her guests, failed to honor an advertised room rate, and failed to properly disinfect Plaintiff's rooms is located in Florida.  The hotel staff members who interacted with Plaintiff did so in Florida.  Defendants are alleged to conduct their respective businesses from Florida, Virginia, or New York.  (Doc. 1 ¶¶ 5–8.)  While Plaintiff alleges that this Court has specific jurisdiction over her claims, the only facts pled to support that contention are that (1) "Plaintiff responded to a Georgia ad regarding Hilton Hotels[,]" and (2) Plaintiff thereafter reviewed the webpage at "https://covid.hilton.com" and "booked a room requesting reasonable accommodations at the Hilton Fort Lauderdale Marina."[7]  (*Id.* ¶ 9.)

The foregoing allegations are insufficient to plausibly allege jurisdiction under subsection one of the Georgia long-arm statute.  Beginning with the "Georgia ad," courts interpreting Georgia's long-arm statute have made clear that the "mere placement of advertisements in Georgia [is] insufficient to authorize the exercise of personal jurisdiction."  *Smith v. Air Ambulance*

_____

[7] Plaintiff has not expressly alleged that she did either such act *from Georgia*.

*Network, Inc.*, 427 S.E.2d 305, 305 (Ga. Ct. App. 1993); *see also Diulus v. Am. Express Travel Related Servs. Co.*, No. 1:19-CV-1551-MHC, 2019 U.S. Dist. LEXIS 234322, at *20 (N.D. Ga. June 26, 2019) (finding that a defendant did not transact business in Georgia even though its email advertisement "triggered Plaintiffs' visit to Turks and Caicos"); *Paradise Media Ventures, LLC v. Mills*, No. 1:13-CV-1003-TWT, 2013 U.S. Dist. LEXIS 171915, at *7 (N.D. Ga. Dec. 5, 2013) (holding that a litigant failed to satisfy subsection one of the long-arm statute because "market[ing] and promot[ing]" a business in Georgia is "not the same as actually transacting business with a person or corporate entity"); *Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1364 (S.D. Ga. 2014) (stating that "the mere fact that a particular website displays an ad that can be viewed in Georgia, or shows a company that does business in Georgia does not, by itself, equate to contact with Georgia.").

Here, the complaint tells us nothing about the "Georgia ad regarding Hilton Hotels" to which Plaintiff responded. We are not told where Plaintiff saw the ad. We are not told what it said. We do not know whether or not the ad appeared online and, if so, where it appeared. There is no connection alleged between the ad and the four, separate entities sued here. While the Court is mindful that Plaintiff is *pro se*, Plaintiff has the burden to establish a prima facie case for jurisdiction. And the bare allegation that Plaintiff

11

"responded to a Georgia ad regarding Hilton Hotels" is insufficient to plausibly allege that any of the four Defendant companies has "purposefully done some act or consummated some transaction" in Georgia through the alleged ad. *Diamond Crystal Brands*, 593 F.3d at 1260; *see also Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) ("Vague and conclusory allegations do not satisfy" plaintiff's "initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.") (citations and quotations marks omitted).

Neither can Plaintiff's alleged reservation of a room at the Hilton Fort Lauderdale Marina be the basis for personal jurisdiction over the four, nonresident Defendants. As an initial matter, it is not clear how Plaintiff made the reservation. It is simply stated that Plaintiff "booked a room[.]" (Doc. 1 ¶ 9.) The complaint does not make clear whether the room was reserved by telephone or Internet. Neither does it state definitively where Plaintiff was when she made the reservation.[8] Assuming the room was booked online, we are not told whether the reservation was made on the hotel's website, or through a third-party website.

---

[8] The Court construes the complaint liberally and thus assumes Plaintiff was in Georgia when she made the reservation. (*See* Doc. 1 ¶¶ 3, 9.)

Again, the critical question for subsection one of the long-arm statute is whether there has been an "actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." *Diamond Crystal Brands*, 593 F.3d at 1260. "If a nonresident defendant has a website where customers can purchase items online and the goods are either shipped to or enjoyed in Georgia, the defendant will generally be found to have 'transacted business' within the state." *Gulfstream Aero. Corp. v. Gulfstream Air Charter, Inc.*, No. 4:17-cv-26, 2018 U.S. Dist. LEXIS 197909, at *8 (S.D. Ga. Nov. 20, 2018) (collecting cases). However, the mere operation of "websites that are accessible everywhere and not specifically in Georgia" is not a sufficient basis for personal jurisdiction under the long-arm statute. *Jordan Outdoor Enters., Ltd. v. That 70's Store, LLC*, 819 F. Supp. 2d 1338, 1343 (M.D. Ga. 2011); *see also Pedowitz Grp., LLC v. Ogden*, No. 1:13-CV-00839-RLV, 2013 U.S. Dist. LEXIS 190499, at *9 (N.D. Ga. Nov. 29, 2013) (defendant did not transact business in Georgia by merely operating a "website [that] is accessible everywhere, not specifically in Georgia.").

On the issue of personal jurisdiction in the context of online hotel reservations, the Georgia Court of Appeals' decision in *Pascarelli v. Koehler*, 816 S.E.2d 723 (Ga. Ct. App. 2018) is instructive. In *Pascarelli*, the court considered whether a Wyoming hotel franchisee was subject to personal

jurisdiction in Georgia when a Georgia resident reserved a room via the hotel's website, operated by Marriott International. *Id.* at 726. In considering whether the hotel transacted business in Georgia under the state long-arm statute, the *Pascarelli* court distinguished the hotel's website from websites facilitating the online sale of goods. The court explained that, with respect to the latter kind of website:

> the resident can bring about the transmission of the goods into the forum state through the order alone. A hotel website allows an online reservation to be made, but this is preliminary to the individual traveling outside the forum state to use the service provided by the hotel. The purpose of the former is fulfilled when the goods reach their destination in the forum state while the purpose of the latter is fulfilled once the resident reaches the hotel outside the forum state.

*Id.* at 727 (citation omitted). The court ultimately held that the defendant did not "transact[ ] any business" in Georgia by merely having a website that enabled Georgia residents to reserve hotel rooms. *Id.* at 727–28.

In this case, Plaintiff has alleged, without further factual embellishment, that she "booked a room" after viewing "Defendants' website regarding Covid-19 cleaning and policies[.]" (Doc. 1 ¶ 9.) Under *Pascarelli*, the maintenance of a website with online reservation capability does not, standing alone, subject a nonresident defendant to personal jurisdiction under subsection one of Georgia's long-arm statute. Thus, Plaintiff's unadorned allegation regarding

her act of "book[ing] a room" does not establish a prima facie case of jurisdiction over Defendants. *Pascarelli*, 816 S.E.2d at 727–28; *see also Garraway v. Riu Hotels SA*, No. 1:16-cv-02830-WSD, 2017 U.S. Dist. LEXIS 180429, at *8 (N.D. Ga. Mar. 10, 2017) (finding that Georgia's long-arm statute did not authorize personal jurisdiction over a foreign hotel defendant where plaintiff booked her trip online from Georgia, but the complaint lacked "information to discern whether [plaintiff] used Defendants' website or a third-party website, or if there were any specific solicitation[s] or advertisement[s] to Defendants' website"); *Gulfstream Aero. Corp.*, 2018 U.S. Dist. LEXIS 197909, at *10 (finding that, under *Pascarelli*, defendant's operation of a generally accessible website that plaintiff used to purchase flights did not subject defendant to personal jurisdiction under Georgia's long-arm statute).

In sum, for the reasons stated above, Plaintiff has not carried her burden to show that Defendants have "purposefully done some act or consummated some transaction in this state[.]" *Diamond Crystal Brands*, 593 F.3d 1260. The exercise of personal jurisdiction over Defendants is thus not permitted under O.C.G.A. § 9-10-91(1).[9]

_____

[9] Even if Defendants transacted business in Georgia, jurisdiction will not exist under subsection one unless Plaintiff's cause of action arises from or is connected with Defendants' Georgia-based business transactions. *See Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)

## 2. O.C.G.A. § 9-10-91(2)

Subsection two of the long-arm statute authorizes the exercise of personal jurisdiction over a party who "[c]ommits a tortious act or omission within this state . . . ." O.C.G.A. § 9-10-91(2).  Again, Plaintiff fails to make a prima facie case for personal jurisdiction here.  As an initial matter, Plaintiff has sued four, separate entities, but she does not make any individualized factual assertions as to how each has committed a tort in Georgia.  Even construed liberally, the only acts or omissions that may have occurred in Georgia concern the "Georgia ad" and Plaintiff's hotel reservation.  In considering subsection two of the long-arm statute, however, "the Eleventh Circuit and  Georgia courts have generally found that torts committed using a computer occur at the physical place where the computer used to commit the tort is located." *FisherBroyles, LLP v. Juris Law Grp.*, No. 1:14-cv-1101-WSD, 2015 U.S. Dist. LEXIS 17312, at *11–12 (N.D. Ga. Feb. 12, 2015) (citations omitted); *see also LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013) (finding that tortious conduct occurred where defendants used computers and, because the computers were used outside of Georgia, the defendants were not subject to personal jurisdiction under § 9-10-91(2)); *Emory*

---

("Jurisdiction exists on the basis of transacting business in this state if . . . the cause of action arises from or is connected with such act or transaction[.]").

*Grp. LLC v. ID Sols., LLC*, No. 1:14-CV-13-TWT, 2014 U.S. Dist. LEXIS 50072, at *9 (N.D. Ga. Apr. 10, 2014) ("When the tortious conduct occurs over an Internet website, the situs of this tort is considered to be where the website, or servers which maintain the website, are located.") (citations omitted).

The hotel that allegedly denied Plaintiff's accommodation requests, falsely advertised its rates, and placed unauthorized charges on Plaintiff's credit card is in Florida.  While the complaint, liberally construed, suggests that Plaintiff was in Georgia when she made her reservation, there is no suggestion that Defendants did any alleged act from a computer or phone in Georgia.  (Doc. 1 ¶ 9.)  To the contrary, Plaintiff alleges that Defendants operate in either Florida, Virginia, or New York.  (*Id.* ¶¶ 5–8.)  Plaintiff's complaint fails to plausibly allege that any Defendant committed a tortious act or omission in Georgia and thus fails to establish personal jurisdiction under subsection two of the long-arm statute.  *See, e.g., Robinson v. Sacramento Hotel Partners*, No. 1:18-CV-03628-ELR, 2019 U.S. Dist. LEXIS 83141, at *10 (N.D. Ga. Jan. 10, 2019) (Georgia plaintiff suing for alleged ADA violations at a California hotel failed to satisfy subsection two of the long-arm statute because "the actions giving rise to Plaintiff's claims all occurred at the subject Hotel in California.").

### 3. O.C.G.A. § 9-10-91(3)

Subsection three of Georgia's long-arm statute provides that a court may exercise personal jurisdiction over a nonresident defendant who:

> Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91(3). Here again, Plaintiff has the burden to allege sufficient facts to make a prima facie case that personal jurisdiction is appropriate under this subsection.

Plaintiff fails to carry her burden. She makes a conclusory allegation that all four Defendants "regularly conduct their business . . . in this State." (Doc. 1 ¶ 2.) But such conclusory allegations are insufficient to establish jurisdiction. *Snow*, 450 F.3d at 1318; *Webster v. Fortiva Fin., LLC*, No. 1:21-CV-3466-AT-JCF, 2022 WL 2389272, at *4 (N.D. Ga. Apr. 14, 2022), *R&R adopted,* 2022 WL 3336481 (N.D. Ga. June 14, 2022). There are no specific facts pled to show that Defendants regularly do business in Georgia or engage in a persistent course of conduct here. The only alleged contacts with Georgia are the "Georgia ad" and the operation of the website on which Plaintiff may have reserved one hotel room. (*Id.* ¶ 9.) It cannot be inferred from either of

these alleged contacts that all four Defendants "regularly" do or solicit business in Georgia.

Moreover, like subsection one, subsection three of the long-arm statute is not satisfied by mere allegations that a defendant operated a website accessible to Georgia residents or displayed an advertisement that is viewable in Georgia. *See Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) (plaintiff "failed to allege . . . that the defendants actually conducted . . . business in Georgia, much less on a regular basis" when defendants' "only alleged contact with Georgia consisted of displaying advertisements . . . on their Internet websites"); *LabMD, Inc.*, 509 F. App'x at 845 (defendant was not subject to personal jurisdiction under Georgia's long-arm statute where it maintained a website accessible to Georgia residents on which it advertised its services, but it "d[id] not offer products or services for purchase online, and d[id] not target Georgia residents"); *Gulfstream Aero. Corp.*, 2018 U.S. Dist. LEXIS 197909, at *13–14 (finding no personal jurisdiction under subsection three of the long-arm statute where defendant's sole contact with Georgia consisted of online ticket sales for charter flights from Florida to Cuba).

Plaintiff has not satisfied her "initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond*

19

*Crystal Brands*, 593 F.3d at 1257 (internal quotation marks omitted).  Even accepting Plaintiff's allegations as true and construing them liberally, no provision of Georgia's long-arm statute confers personal jurisdiction over Defendants.  "Because [Plaintiff] failed to demonstrate jurisdiction under Georgia's long-arm statute, we need not decide whether jurisdiction [i]s proper under the Due Process Clause." *Henriquez*, 500 F. App'x at 829.

### B. Transfer

The Eleventh Circuit has stated that if a district court lacks personal jurisdiction, it may not evaluate the merits of the case. *See Posner*, 178 F.3d at 1214 n.6 (stating that "[a] court without personal jurisdiction is powerless to take further action.").  Defendants ask the Court to dismiss the case or, in the alternative, to transfer it to the United States District Court for the Southern District of Florida.

Pursuant to 28 U.S.C. § 1631, if a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed[.]"  While § 1631 undoubtedly applies when subject matter jurisdiction is lacking, "courts are divided on whether § 1631 also allows transfer of a case to cure a lack of personal jurisdiction." *Irving v. Bd. of Chosen Freeholders*, No. 1:18-CV-02845-RWS, 2019 U.S. Dist. LEXIS 30701,

at *10 (N.D. Ga. Feb. 26, 2019); *Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1351 (N.D. Ga. 2018) ("It is unclear in this circuit whether § 1631 would be applied to authorize the transfer to another court when personal, as opposed to subject-matter, jurisdiction is lacking.").

"Alternatively, 28 U.S.C. § 1406(a) authorizes courts to transfer venue when personal jurisdiction is lacking." *Empirical Regent, LLC v. Sunny Design & Bus. Consulting, LLC*, No. 1:19-CV-3253-MHC, 2020 U.S. Dist. LEXIS 143503, at *36 (N.D. Ga. Feb. 25, 2020). Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "The language of [28 U.S.C. §] 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *Manley v. Engram*, 755 F.2d 1463, 1467 n.8 (11th Cir. 1985) (citation omitted) ("Although [28 U.S.C. § 1406(a)] speaks only of cases where 'venue' in the original forum is wrong, it has been held to operate when there exists in the original forum an obstacle—whether incorrect venue, absence of personal jurisdiction, or both—to a prompt adjudication on the

21

merits."). "The decision whether to transfer a case is left to the sound discretion of the district court." *Roofing Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982).

Here, Defendants have requested in the alternative that the case be transferred to the Southern District of Florida. As they point out, the hotel that is the subject of this case is located in that district, and most – if not all – of the relevant, underlying events occurred there. Thus, it appears that venue would be proper in the Southern District of Florida. *See* 28 U.S.C. § 1391(b)(2) (stating that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). "Generally, the 'interest of justice' requires courts to transfer cases to the appropriate judicial district rather than dismiss them." *Clemmons v. Animal Care*, No. 1:12-CV-01433-TWT-JFK, 2012 U.S. Dist. LEXIS 170477, at *8 (N.D. Ga. Oct. 22, 2012); *Ruddock v. Liquid Transp. Corp.*, No. 1:17-CV-4805-SCJ, 2018 WL 6920675, at *5 (N.D. Ga. June 25, 2018). Further, it may be "in the interest of justice to transfer [a] case rather than dismiss it" where "it will save Plaintiff—a *pro se* litigant—time and expense in refiling the case" in the proper venue. *Irving*, 2019 U.S. Dist. LEXIS 30701, at *11–12. In accordance with these principles, the Court finds it to be in the interest of justice to transfer this case to the

United States District Court for the Southern District of Florida.  *See, e.g., id.*; *Empirical Regent*, 2020 U.S. Dist. LEXIS 143503, at *36.

For the reasons set forth above, Defendants' motions are GRANTED IN PART.  Instead of dismissing Plaintiff's action, the Court will transfer the case.  The Court makes no determination as to the merits of Plaintiff's claims.

## III.    Conclusion

The Court finds that the exercise of personal jurisdiction over Defendants is not authorized under the Georgia long-arm statute.  Defendants' motions to dismiss or, in the alternative, to transfer venue (Doc. 8, 21) are thus **GRANTED IN PART** as set forth in this order.

The Clerk is **DIRECTED** to transfer this case to the United States District Court for the Southern District of Florida.

**SO ORDERED** this 25th day of March, 2024.

SARAH E. GERAGHTY
United States District Judge